IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULITA G. GARCIA, individually and
as personal representative of the Estate of
BENEDICT ERIC GARCIA, deceased, and
BERNARD M. GARCIA, individually,

        Plaintiffs,

v.                                                   No. CIV 02-429 LH/LFG ACE

LINDA REED and ANESTAT, INC.,
a Florida corporation,

        Defendants.

**MAGISTRATE JUDGE'S DENIAL OF REQUEST FOR DISCOVERY
AND RECOMMENDED DISPOSITION[1] ON REED'S
MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 2679(d)(3)**

THIS MATTER is before the Court on Linda Reed's ("Reed" or "CRNA") request for discovery[2] in support of her motion to certify that she was acting within the course and scope of her employment with the United States government [doc. 1] at all times pertinent to the underlying factual allegations. The essence of Reed's position is that she was acting as a federal government

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] On June 12, 2002, counsel for Reed, Anestat, Inc. ("Anestat"), Plaintiffs ("Garcias"), and the United States Government attended a Rule 16 Scheduling Conference, during which counsel for all parties discussed their varying positions related to discovery. The Court's initial reaction was that discovery might be appropriate. However, on further contemplation and research, the Court concludes that its initial reaction was in error.

employee rather than as an independent contractor, and is, therefore, immune from suit and released from liability. After carefully considering the pertinent law, along with the pleadings, briefs and attachments, the Court denies the request for discovery and recommends finding that Reed was an independent contractor, who is subject to being sued by Plaintiffs in state court, and remanding this litigation to state court.[3]

## Factual and Procedural Background

Plaintiffs' Complaint for Medical Negligence and Wrongful Death against Reed and Anestat alleges that Plaintiffs' 13-year old son, Eric, died as a result of medical care he received at the Santa Fe Indian Hospital related to day surgery for the excision of three cysts on his back. Reed administered anesthesia for Eric's surgery, and Plaintiffs contend that Eric died because of lack of oxygen to the brain as a result of severe brain trauma, for which "Reed bears the primary responsibility." [Complaint, ¶ 28.].

Reed is a certified registered nurse anesthetist (CRNA) [doc. 1, Reed Affidavit], who specializes in the field of anesthesiology, and provided anesthesia coverage to the Santa Fe Indian Hospital[4] during the incident in question. Reed obtained the position at Santa Fe Indian Hospital through Anestat, a Florida corporation, that contracted with Reed and placed her at the Santa Fe Indian Hospital. Reed seeks full discovery[5] in the attempt to show that she was working under the

---

[3]The parties agree that if the federal district court determines that Reed is not a federal employee, the case should be remanded to state court. [IPTR.]

[4]The hospital is a government funded hospital.

[5]In the IPTR, Reed explains that she intends to serve written discovery upon the United States, including possibly requests for admissions to Plaintiff and the U.S. She seeks to depose Chief of Staff, Chief of Surgery, and the surgeon performing Eric's surgery, as well as other medical staff involved in "the surgery and the resuscitative efforts." She may also depose someone from the Albuquerque Area Office and retain an expert to testify on the New Mexico's Nursing Practice Act. [IPTR.]

day-to-day supervision or control of the federal government, and was, therefore, a government employee during her employment at the hospital, and/or at the time of Eric's surgery. [Doc. 1.] The government noticed its refusal to certify that Reed was acting within the course and scope of government employment and filed a brief, with attachments, in opposition to Reed's motion to certify and her attached affidavit. [Doc. 3, 4.] The government opposes the request for discovery as well, but states that if any discovery is allowed it should be limited to the employment status issues. Anestat also requests discovery, limited to the issues of government control and supervision as of the time of the surgery. Plaintiffs oppose Reed's motion to certify and argue that no discovery is necessary on this issue because the Court can rule on the pleadings.

On November 8, 1999, Plaintiffs filed their first complaint in this matter in federal court (CIV No. 99-1301 SC/WWD) and named the United States, Reed and Anestat as defendants. [Borg Aff. at ¶ 4, attached to Plaintiff's Motion for Partial Summary Judgment, Doc. 1.] Before serving the federal government with the complaint, Plaintiffs reached settlement with the United States. [Id. at ¶ 5.] Plaintiffs understood that the federal government considered Reed to be an independent contractor, rather than a federal employee. Plaintiffs allegedly relied on the government's representation that Reed was an independent contractor and intended to sue Reed separately in state court. [Id. ¶¶ 6-7.] The settlement apparently released the government from all claims related to this incident that were raised or could have been raised against government employees and institutions.

On March 9, 2001, after the settlement, the Garcias filed a complaint against Reed and Anestat in state court. On March 26, 1998, Reed responded that she was a federal employee who was not subject to suit under the Federal Tort Claims Act ("FTCA"). [State Court Answer.] On about July 17, 2001, Reed filed a motion to certify her status as a federal employee in the state court

3

action, attaching her affidavit in support of the motion. [Doc. 1.] On April 16, 2002, the government removed the state court action to federal court, and argued that the motion to certify filed in state court was premature. After removal of the case to federal court, the United States Attorney, in accordance with 28 U.S.C. § 2679, declined to certify Reed as a federal employee, and filed a response to Reed's state court motion to certify. [Doc. 3, 4] Reed did not file a reply brief.

The only other pending motion filed in this case is Plaintiffs' motion for partial summary judgment and in opposition to Reed's motion for certification on grounds of estoppel. [Doc. 1.] A response and reply were filed to this motion. [Docs. 11, 13.] Based on the recommended disposition discussed below, the Court further recommends that Plaintiffs' motion for partial summary judgment or request that Reed be estopped from asserting that she is a government employee be denied as moot.

The two narrow questions before this Court are: (1) should discovery be permitted on the issue of Reed's employment relationship or status with the government; and (2) was Reed an independent contractor or a. federal employee.[6] These questions are inextricably intertwined and a resolution of one necessarily affects the other. If the Court decides that Reed was an independent contractor, Plaintiffs may proceed against her in state court. In contrast, if it is determined that Reed is a federal employee, the prior settlement between the Garcias and the government, would preclude Plaintiffs from proceeding against Reed because the settlement resolved all claims that were or could have been brought against government employees.

---

[6]Clearly, the magistrate judge has the authority to determine the first question relating to the extent of discovery allowable. However, because the second question is necessarily intertwined with the first, results in a remand to state court, and is, therefore, dispositive as to any federal questions before the Court, the Magistrate provides a recommended disposition in accordance with 28 U.S.C. § 636(b), thereby permitting the parties to file objections.

**Legal Standard**

Section 1346(b) of the FTCA provides a limited waiver of sovereign immunity allowing for the United States to be sued for damages arising from torts committed by government employees who are acting within the scope of their employment. 28 U.S.C. § 1346(b). The FTCA defines "employees" as officers and employees of federal agencies. 28 U.S.C. § 2671. The FTCA, however, does not authorize suits against the United States based on the acts of independent contractors or their employees. Curry v. United States, 97 F.3d 412, 414 (10th Cir. 1996) (internal citations omitted); Bird v. United States, 949 F.2d 1079, 1081 (10th Cir. 1991).

The FTCA also provides that if the Attorney General[7] certifies that a defendant employee was acting within the scope of his/her office or employment at the times pertinent to the allegations, the United States will be substituted as the party defendant. 28 U.S.C. § 2679(d)(1). If the action was pending in state court, before such certification is issued, it will be removed to federal court. 28 U.S.C. § 2679(d)(2). If, however, the Attorney General, refused to certify the scope of office or employment, as is true in this case, the employee may petition the court to find and certify that he or she was acting within the scope of office or employment, any time before trial. 28 U.S.C. §2679(d)(3). If this petition for certification is filed in state court, the action may be removed by the Attorney General to the federal district court. Id. Should the district court determine that the employee was not acting within the scope of his or her federal employment, the action "shall be remanded to the State Court." Id.

---

[7]The Attorney General has delegated to the United States Attorney the authority to provide the § 2679(d) certification. 28 C.F.R. § 15.3 (1989).

The FTCA does not expressly instruct a federal district court how to review questions involving a petition for certification, and/or whether some amount of discovery should be permitted before the decision is made. Schrob v. Catterson, 967 F.2d 929, 935 (3d Cir. 1992). Some circuit courts have begun to formulate an approach for reviewing scope of certification questions. Id.; Gutierrez de Martinez v. Drug Enforcement Administration, 111 F.3d 1148, 1153 (4th Cir.), *cert. denied*, 522 U.S. 931, 118 S.Ct. 335 (1997). For example, if the certification issue is disputed, the burden shifts to the plaintiff,[8] "who must come forward with specific facts rebutting the certification [decision]." Schrob, 967 F.2d at 935 (internal citations omitted). "[C]hallenges to the scope certification 'must be resolved before trial, as soon after the motion for substitution as practicable, even if an evidentiary hearing is needed to resolve relevant fact disputes.'" Id. (internal citations omitted). "The difficulty [in determining the amount of fact finding necessary] lies in balancing the need for a meaningful review of the scope certification with the need to protect federal employees from burdensome discovery." Id. at 936.

The case law addressing this question clearly contemplates the possibility that some limited fact finding, including an evidentiary hearing, may be necessary before making the certification determination. Id. at 935-36.

> [I]n some instances an independent hearing may be required to determine whether an act is within the 'scope of employment' for Westfall Act purposes . . . . However, such a hearing is required only in those special rare circumstances where there is a factual dispute which would decide the scope of employment issue, as the crux of the certification dispute, even though it is incidentally coextensive with the merits of the case.

---

[8]More frequently, it appears that the plaintiff is the party disputing the certification. Here, for obvious reasons, it is Defendant Reed who challenges the government's failure to certify her employment as a government employee.

Id. (internal citation omitted).[9] In contrast, a court need not always grant discovery before making the determination, where the plaintiffs failed to present evidence contradicting the certification or where there is no factual dispute. Id. "If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion . . . based on the pleadings, documentary evidence, and affidavits." Id. at 936. If, however, there is a genuine issue of material fact as to the scope of employment, the district court should permit discovery, as needed. "But the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible, although these are matters within its discretion." Id. *See also* Kimbro v. Velten, 30 F.3d 1501, 1508 (D.C.Cir. 1994) (court determine scope of employment under § 2679(d)(3), and where necessary, conducts a hearing), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2584 (1995); Melendez-Colon v. United States, 56 F.Supp.2d 142, 144 (D.P.R. 1999) (if pleadings, affidavits and any supporting documentary evidence reveals issue of material fact, the court can hold an evidentiary hearing on scope of employment issue under the FTCA).

## Discussion

### I. SCOPE OF DISCOVERY

The scope of discovery is within the discretion of the district court, and will be subject to an abuse of discretion review. RMI Titanium Co. v. Westinghouse Electric Corp., 78 F.3d 1125, 1143 (6th Cir. 1996) (discussing § 2679(d) certification question). The Court concludes here, that the

---

[9]The scope of employment determination, discussed by the Schrob Court and others, concerns a different question than the issue of the employee's "status" that is before this Court. For example, the Court in Schrob examined the question of whether an assistant U.S. attorney's alleged misleading representations to a court, were taken within the scope of his employment, in contrast with the question of whether the individual was or was not a government employee. However, both these determinations are made with respect to the same statutory provision, 28 U.S.C. § 2679, also known as the Westfall Act. Williams v. Brooks, 862 F. Supp. 151, 152 (S.D. Tex. 1994), *aff'd by* 71 F.3d 502 (5th Cir. 1995), and therefore, the analysis as to the two determinations is similar.

pleadings, affidavits and supporting documentary evidence, including Reed's affidavit and the contract between Reed and Anestat regarding her employment at the hospital, do not reveal an issue of material fact. In other words, Reed has not satisfied her burden, by coming forward with specific evidence that contradicts the government's decision to decline certification. Accordingly, there is no need for discovery or an evidentiary hearing. *See* Wooten v. Hudson, 71 F. Supp.2d 1149, 1154 (E.D.Okla. 1999) (court concluded, based on review of the pleadings and the contract, that the physician was not a federal employee for purposes of substitution under the FTCA, noting that the defendant/doctor failed to satisfy his burden of proving his status as a government employee); RMI Titanium, 78 F.3d at 1143-44 (summary dismissal of scope challenge warranted where plaintiff's assertions, even if taken as true, showed he was acting within scope of employment); Williams, 862 F. Supp. at 152 (court made scope of employment determination based on submissions on file, including motion to dismiss and motion to substitute United States as party). *See also* Gutierrez de Martinez, 111 F.3d at 1154-55 ("only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the [parties] be burdened with discovery and an evidentiary hearing."

More specifically, the Court notes that when Reed initially moved for certification under § 2679(d)(3), she recognized, by attaching her affidavit, that it was her burden to present specific facts showing she was a federal employee. [Doc. 1, Reed Aff., attached to Motion.] Indeed, her affidavit discusses some of the elements she must meet, as set forth by the Tenth Circuit in Bird, 949 F.2d 1079. She also attached a copy of the contract, or "service agreement," entered into between her and Anestat.

Notwithstanding this attempt to satisfy her burden of demonstrating her status as a government employee, Reed provides only conclusory statements regarding the hospital's supervision of her and selective quotes from her contract. Undoubtably, however, the facts relating to supervision and control were within Reed's personal knowledge, and it was incumbent on her to have supplied more specific evidence of the hospital's day-to-day control and supervision over her, assuming such contentions were truthful and accurate. For example, to have shown the hospital's alleged actual supervision of her, she might have provided information as to whether the hospital evaluated her performance, whether it set her hours, and whether it provided her training. Yet she states merely that she was under the supervision of Dr. Wirth, who was Chief of Medical Staff. Conclusory statements without supporting facts are insufficient to raise a triable issue. *See* Gutierrez de Martinez, 111 F.3d at 1155 (requiring that the plaintiff's submissions contain specific evidence or the forecast of specific evidence rather than merely conclusory averments).

Similarly, if accurate, she could have provided affidavit testimony as to how the operating surgeon, during Eric's procedure, supervised or directed her to take the actions she did. In contrast, her affidavit states only that she "considered [her]self to be under the authority and supervision of the operating surgeon." There is no need to depose Dr. Wirth or the operating surgeon regarding what supervision or direction they gave Reed. Who would know better than Reed as to how she was directed, if at all, during Eric's surgery and what types of direction and authority were provided to her by the hospital and/or these physicians?

The Court anticipates Reed to argue that she was unable to bring forward specific facts to support her position and thereby rebut the United States' failure to certify her employment, without the opportunity for discovery. Yet as stated above, Reed certainly was in control of any information

that might have shown what direction she was given at the hospital and/or at the time of Eric's surgery. Not only did she fail to supply this information in her affidavit, she neglected to file any reply brief at all, in which she might have provided additional reasons why certification of her alleged government status should be granted. The failure to respond in opposition constitutes acquiescence. *See* D.N.M. LR-Civ 7.5(b). Moreover, she never articulated what she believes the results of the discovery she seeks might show.

Finally, the Court declines to permit discovery on this issue because the undisputed facts, particularly as demonstrated by provisions in the contract, permit the Court to make a ruling on the certification question, without further evidence. The contract itself and its application place Reed outside the parameters of a federal employment relationship. For example, the contract, signed by Reed, expressly states that Reed accepted the assignment "as an independent contractor." [Contract, Doc. 1.] (*See* more in-depth discussion of contract below in § II.) For these reasons and because the Court cannot conclude that a genuine issue of fact exists as to the certification issue, the Court determines that neither Plaintiff nor the government should be burdened with discovery on this question.

## II.     INDEPENDENT CONTRACTOR VERSUS GOVERNMENT EMPLOYEE

"In determining whether an individual is a federal employee or an independent contractor, the critical question is whether the federal government has the power to control the detailed physical performance of the individual." Duplan v. Harper, 188 F.3d 1195, 1200 (10th Cir. 1999) (internal citations omitted). The Tenth Circuit articulates the crucial inquiry as being 'whether the Government supervises the day-to-day operations of the individual." Id. (internal citation omitted). In reaching a determination on this question, seven factors are considered:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses [her] own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Lilly v. Fieldstone, 876 F.2d 857, 859 (10th Cir. 1989) (internal citation omitted).

Here, the contract evidences the intent of the parties to create an independent contractor relationship. *See* Bowman v. United States, 821 F. Supp. 1442, 1445 (D. Wyo. 1993), *aff'd by* 65 F.3d 856 (10th Cir. 1995) (contract is evidence of intent). Reed's contract, signed by herself and a placement coordinator apparently with Anestat, expressly states that she accepts the assignment at Santa Fe Indian Hospital for a designated period of time "as an independent contractor CRNA . . . ." In addition, the contract provides that she is "not an employee of Anestat, Inc. ***or the IHS for which I perform temporary anesthesia services.***" [Doc. 1, Contract, emphasis added.]

In addition, the contract sets forth that Reed must provide anesthesia coverage 24 hours per day with immediate availability on call-back for emergencies, utilizing a radio paging system supplied by Anestat. The contract establishes Reed's pay rate at $2526.00 per 7 day week, which reflects compensation for all services, including call backs, malpractice insurance, housing and transportation. However, the contract sets aside additional monies for relief services to cover per diem relief contractor help. Left over monies in the relief fund could be "bonused" to Reed as taxable income. The contract is clear that Anestat, rather than the hospital, is responsible for sending and paying for a relief contractor to fill in for Reed, as needed. Furthermore, the contract expressly states that Reed is to provide her own malpractice insurance policy and is solely responsible for payment of taxes, disability, unemployment, etc. The contract also provides that Reed is to provide Anestat, rather than

the hospital, with notice for vacation relief or termination of the assignment, Finally, Anestat compensates Reed directly after she provides Anestat with her verified time sheet (signed by Dr. Wirth.) [Doc. 1, Contract.]

The only portion of the contract (other than Dr. Wirth's signature on Reed's time sheets) that might be read to provide the hospital with some authority over Reed is the last paragraph stating that Reed will abide by the Santa Fe Indian Health Center Service Unit bylaws, policy and procedures. [Doc. 1, Contract, ¶ 8.] However, this portion of the contract is not significant evidence of the government's alleged control over Reed. Indeed, courts have held that the "government's ability to compel compliance with standards, rules and regulations [is] not important." DelValle v. Sanchez, 170 F. Supp. 2d 1254, 1264-65 (S.D.Fla. 2001); Duplan, 188 F.3d at 1201 (right of the government to inspect work to determine contract doctors meet minimum qualifications and for quality assurance does not automatically convert a contractor into a government employee). In addition, the Tenth Circuit has stated that "[s]urely, being subject to [a] hospital's rules as a condition of staff privileges does *not* remotely make a private physician an employee of that hospital." Id. (internal citation omitted) (emphasis in original).

Again, degree of control and supervision of day-to-day activities is the crucial inquiry, of which the contract and terms fixing the relationship are critical. DelValle, 170 F.Supp.2d at 1265. Similar to the contract in DelValle, no part of the agreement between Reed and Anestat stated that Reed or Anestat was subject to the hospital's control. Id. Nor is there any other evidence, besides Reed's conclusory assertion that she considered herself to be a government employee, that contradicts the clear language in the contract. *See* id. at 1267 (where contractual language is clear, the court will not look at extraneous testimony to determine the parties' intent) (internal citation omitted).

In addition, as to the second element of the analysis, there is little evidence here showing that the hospital or government controlled much more than the end result, i.e., satisfactory patient care and treatment. For example, Reed does not allege or provide evidence to show that the hospital controlled or supervised the manner in which she rendered medical treatment or anesthesia to patients. There is no evidence that the hospital influenced or reviewed Reed's actual performance. Her hours and pay were set by Anestat, not the hospital. She provided Anestat, rather than the hospital, with notice of her absence so that Anestat could send relief help.

Reed attests in her affidavit that she did not have the liberty to decline providing anesthesia for any patient assigned to her, that she used the hospital's equipment, and that her attire and hours did not differ from those of other hospital employees. [Reed Aff.] However, under these circumstances, this evidence does not convince the Court that Reed was under the day-to-day supervision and control of the hospital. The fact that she could not decline to provide anesthesia to a patient assigned to her, when she was the only anesthetist at the hospital (and there were no anesthesiologists there either) [Reed Aff.], goes more to supplying good patient care, than showing that she was under the hospital's supervision and control. In addition, there is no evidence that any type of dress code employed at the hospital, to which Reed adhered, diminished her control over choices she made in fulfilling her duties. Duplan, 188 F.3d at 1201.

Furthermore, with respect to the fourth and fifth elements of the analysis, the contract makes clear that Reed pays for her own malpractice insurance and also pays for her own taxes, unemployment and disability. The first page of Reed's malpractice insurance characterizes her as a "fully self-employed nurse anesthetist." [Doc. 1, Plaintiffs' Motion for Partial Summary Judgment, Ex. E.] There is no evidence that federal regulations prohibit this type of contractual relationship,

13

and indeed, ample case law discusses similar contractual relationships. Finally, it is uncertain whether Reed could subcontract her services. However, it is clear that Anestat would provide and pay for relief help.

The Court concludes, based on the recommended seven-step analysis, that Reed failed to sustain her burden of showing that she was a government employee. Instead, the undisputed evidence demonstrates that she was an independent contractor during her employment at the hospital. Moreover, there is no evidence that she was became a federal employee, or was subject to more supervision and control, during Eric's surgery. This Court's recommendation is consistent with a number of opinions from the Tenth Circuit and other federal courts. *See, e.g.,* Duplan v. Harper, 188 F.3d 1195 (10th Cir. 1999) (requirement that doctor be at clinic at designated hours, government's provision of equipment and office space, and government's control over patient records were insufficient to demonstrate government control over physician when balanced against contract and delineation of responsibility and insurance liability); Lurch v. United States, 719 F.2d 333 (10th Cir. 1983) (contractual relationship itself precluded finding that physician was a government employee; in addition, medical contractor's providing own workers' compensation and insurance supported finding of independent contractor), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1710 (1984); Curry v. United States, 97 F.3d 412 (10th Cir. 1996) (nature of contract consistent with finding that road grader was not government employee); Bowman v. United States, 821 F. Supp. 1442 (D. Wyo. 1993) (contract established that company was independent contractor), *aff'd by* 65 F.3d 856 (10th Cir. 1995); Wooten v. Hudson, 71 F. Supp. 2d 1149 (E.D. Okla. 1999) (ambiguous agreement as to parties' intent was accorded no weight in showing hospital's control over physician); Robb v. United States, 80 F.3d 884 (4th Cir. 1996) ("while some provisions of the agreement are consistent with an

employment relationship, we cannot ignore the clear expression of intent in the [contract] to establish an independent contractor relationship."); Bernie v. United States, 712 F.2d 1271 (8th Cir. 1983) (contract physician was independent contractor); Linkous v. United States, 142 F.3d 271 (5th Cir. 1998) (same).

In reaching this decision, the Court must discuss and distinguish the decision in Bird v. United States, in which the Tenth Circuit concluded that a certified registered nurse anesthetist (CRNA), employed at an Indian Hospital through an outside agency, was a government employee. Similar to this case, the CRNA was accused of causing the death of plaintiff's decedent. Bird, 949 F.2d 1079, 1080-81 (10th Cir. 1991). Like Reed, the CRNA, in Bird, considered himself to be an employee of the hospital and alleged that the operating surgeon had ultimate authority over him. Both he and Reed testified that their hours and attire did not differ from other hospital employees, were required to work with patients designated by others, used hospital equipment, and were under the supervision of the hospital supervision. Id. at 1081, 1086; *compare* Reed Aff. The CRNA, in Bird, further testified that he had no separate office space and could not see patients in any other place. Id. at 1086. The Tenth Circuit overturned the district court's finding that the CRNA was an independent contractor, holding that he served under the license, supervision, and control of the surgeon or physician anesthesiologist as an integral part of the a government operating team. Id. at 1088.

The points distinguishing Bird from this case are significant. First, there was no written agreement like the one between Reed and Anestat. Id. at 1081. The only pertinent written document in Bird was a requisition for service that stated the CRNA was to provide anesthesia coverage for surgeries performed on eligible Indian patients. The service was to cover 5 days, with call back and

15

2 weekend days for a designated period of time. Id. No contract characterized the CRNA in Bird as an "independent contractor." No contract term provided "[I] am not an employee" [of the government hospital] as there is here. *See* id. at 1084 (Tenth Circuit relied on fact that there was no provision that the CRNA should not be considered an employee of the hospital.) In addition, nothing required the CRNA in Bird to provide his own malpractice coverage or to pay his own taxes, etc. As discussed above, the contract language and requirements, are persuasive and significant evidence, as to the type of relationship that exists. *See, e.g.,* DelValle, 170 F. Supp.2d at 1266 ("most importantly" contract itself specifically stated that the parties intended to create an independent contractor relationship).

The second reason Bird is distinguishable is because applicable Oklahoma state law provided that CRNAs administering anesthesia were to be "under the supervision of and in the immediate presence of a physician licensed to practice medicine." Id. at 1081. Moreover, the Court relied on this factor in deciding that the CRNA was a government employee in that case. Id. at 1086, 1087.

Here, as pointed out by the government in its response brief, there is no similar New Mexico statute. Instead, there is statutory language stating that a nurse anesthetist:

> may provide pre-operative, intra-operative and post-operative anesthesia care and related services in accordance with the current American association of nurse anesthetists' guidelines for nurse anesthesia practice. . . . shall function under the direction of and in collaboration with a licensed physician . . . in performing the advanced practice of nurse anesthesia care. . . . [C]ollaboration means the process in which a certified registered nurse anesthetist functions jointly with a licensed physician . . . Collaboration includes systematic formal planning and evaluation between the professionals involved in the collaborative practice arrangements.

NMSA 61-3-23.3(C) (1999 Repl. Pam.)[10]  This language, while providing the physician with some control over the procedure, also includes language to the effect that the CRNA is a professional with whom the physician collaborates.  Indeed, the revised statute appears to have clarified the relationship to one that is now characterized as interdependent.  Unlike the Oklahoma statute in Bird, the New Mexico statute does not require that the physician "supervise" or be "present" during the procedure administered by the CRNA.  In addition, Reed has not come forward with any evidence that the operating surgeon was present during the procedures she administered or that he or she supervised or directed Reed in any way.  For these reasons, this Court declines to reach the same result as did the Tenth Circuit in Bird.

### Recommended Disposition

As discussed above, this Court determines that no discovery is necessary before this issue may be decided and proposes finding that Defendant Reed is an independent contractor, with the result that this case be remanded to state court.  In addition, this Court recommends that Plaintiffs' Motion for Partial Summary Judgment and request that Reed be estopped from claiming that she is a government employee be denied as moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[10]The government attaches to its brief a more recent version of this statute that replaced the "under the direction and in collaboration with a licensed physician" language with "shall function in an interdependent role as a member of a health care team . . ." NMSA 61-3-23.3 (2001 Cum. Supp.)  However, it appears that the above-quoted statute would have been in effect at the time of the incident in question, that occurred in 1998.